Sladky Motor Vehicle Operator License Case.

Argued November 13, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Elmer T. Bolla,* Deputy Attorney General, with him *William C. Sennett,* Attorney General, for Commonwealth, appellant.

No argument was made nor brief submitted for appellee.

OPINION BY WRIGHT, P. J., December 12, 1968:

This appeal is ruled by our opinion filed this day in *Lucchetti Motor Vehicle Operator License Case,* 213 Pa. Superior Ct. 397, 249 A. 2d 783. The factual situation and reasoning of the hearing judge appear in the following excerpt from the opinion below:

"On April 26, 1966, at about 5:50 o'clock A.M., Trooper Stephen Laposki, of the Pennsylvania State Police, was operating properly tested radar timing equipment on the Pennsylvania Turnpike in Somerset County, Pennsylvania, and, pursuant to his duties, timed the speed of the appellant as operating a motor vehicle at the rate of 64 miles per hour in a 50 mile per hour speed zone. An Information was filed before a Justice of the Peace whereupon the appellant

had paid the fine and costs. Appellant's previous operating record reflects three prior operating violations for which the Secretary had sent a warning letter to appellant without imposing any suspension.

"The appellant testified in his own behalf. He is employed by Cooper-Jarrett, a trucking firm, and drives tractor-trailers between Westmoreland County and New Jersey in the course of his employment. He is married, has four children, and is the sole support of himself and his family. He testified that he operates a motor vehicle approximately 110,000 miles a year and that retention of his operating privileges is essential for his earning a living. As to the particular time in question, he testified that he had been warned by drivers approaching in the opposite direction, by the flashing of lights, of the presence of police timing speed by radar, and he had been watching his speedometer and tachometer at the time in question. He testified that these reflected his rate of speed at 52 miles per hour. He stated that the control of the mechanical features of his trucks is in the hands of his employer, that he had reported to his employer the problems connected with the speedometer and tachometer, and he had received assurances that the equipment was functioning properly.

"This is a case of speed and speed alone, without any attendant aggravating circumstances. There is no accident connected with the instant operating violation. In addition, it appears that appellant is not in personal control of the equipment and is an operator of one tractor-trailer of a fleet. Had this been a case where he had been operating his personal vehicle, it would seem proper for responsibility to be affixed to him for the proper functioning of his speedometer. Where, as here, the speedometer is in control of his employer and he has reported mechanical problems con-

nected with his vehicle to his employer, and has received assurances prior to operating his vehicle that the vehicle is in proper condition, responsibility for the proper functioning of the speedometer should not be borne by him, especially where his livelihood is at stake".

This is appellant's fourth speeding violation. We are not in accord with the conclusion of the court below that an offense by the operator of a tractor-trailer may be excused on the ground that he was not responsible for the alleged improper functioning of the speedometer.

The order of the court below is reversed, and the order of the Secretary of Revenue is reinstated.